# CRIMINAL COMPLAINT

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>KEVIN MCDONALD and LEVON AVETISYAN | DOCKET NO.<br><br>MAGISTRATE'S CASE NO.<br>**08 0947M** |

Complaint for violation of Title 18, United States Code, § 1029(a)(3)

| NAME OF MAGISTRATE JUDGE<br>Hon. FREDERICK F. MUMM | UNITED STATES MAGISTRATE JUDGE | LOCATION<br>La Verne, CA |
|---|---|---|

| DATE OF OFFENSE<br>April 15, 2008 | PLACE OF OFFENSE<br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN) |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

On or about April 15, 2008, in Los Angeles County, within the Central District of California, defendants Kevin MCDONALD and Levon AVETISYAN knowingly and with intent to defraud possessed fifteen or more unauthorized access devices in violation of Title 18, United States Code, Section 1029(a)(3), Possession of Fifteen or More Unauthorized Access Devices.

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:
(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE:

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>Michael Wisely |
|---|---|
| | OFFICIAL TITLE<br>SA- USSS |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE (1) | DATE<br>April 17, 2008 |
|---|---|

1) See Federal Rules of Criminal Procedure rules 3 and 54.
AUSA STEPHEN A. CAZARES    REC: Detention

**AFFIDAVIT IN SUPPORT OF ARREST**

I, Michael Wisely, being duly sworn hereby declare and state:

**INTRODUCTION**

1. I am a Special Agent ("SA") of the United States Secret Service ("USSS") and have been employed with the USSS since May 2007. I am currently assigned to the Los Angeles Field Office, Financial Crimes Investigations squad, to investigate violations of federal law relating to financial crimes, including the theft of individual identifiers as a means to further financial crime. I received 28 weeks of training at the federal law enforcement training center in Brunswick, Georgia, relating to the theft and fraudulent use of individual identifying information, the transfer of information onto stolen or counterfeited access devises and schemes intended to defraud financial institutions. I have also conferred with my supervisors and more experienced SAs regarding the facts and conclusions stated below.

2. This affidavit is submitted in support of a criminal complaint charging Kevin MCDONALD and Levon AVETISYAN with Possession of Fifteen or More Counterfeit or Unauthorized Access Devices in violation of 18 U.S.C. § 1029(a)(3).

-1-

3. The facts set forth in this affidavit are based upon my personal observations, training and experience, and information obtained during this investigation from other sources, including: (a) other law enforcement officers; (b) statements made or reported by various witnesses with personal knowledge of relevant facts; and (c) my review of relevant records and reports. This affidavit is intended to establish that there is sufficient probable cause for the arrest of MCDONALD and AVETISYAN and does not purport to set forth all of my knowledge of or investigation into this matter.

**SUMMARY OF INVESTIGATION**

4. On April 15, 2008, the USSS, Los Angeles Field Office, Financial Crimes Investigations squad, received information from the La Verne Police Department ("La Verne PD") that two individuals identified as Kevin MCDONALD and Levon AVETISYAN were in possession of well over 200 credit cards and retail gift cards. Many of the credit and gift cards found in the possession of MCDONALD and AVETISYAN were later determined to be unauthorized, altered, or manipulated. Several cards were altered to include the names of MCDONALD and AVETISYAN. Officers of the La Verne PD reported the following facts to me and my colleagues at

the USSS:

      a.   MCDONALD and AVETISYAN first came to the attention of the La Verne PD while detectives from that department were conducting criminal surveillance in the City of La Verne, California, on an unrelated case. Detectives of the La Verne PD witnessed MCDONALD briefly park a white GMC pick-up truck that he was driving in a "NO PARKING" zone directly across from a Target department store in La Verne. AVETISYAN was then observed exiting the white GMC pick-up truck and entered the Target store. The white GMC pick-up truck driven by MCDONALD had a rear Nevada license plate which the detectives queried. The vehicle had no front license plate. The detectives were able to determine at that time that the registration for the white GMC pick-up truck driven by MCDONALD was expired. The detectives later discovered that the individual to whom the vehicle was registered was not MCDONALD or AVETISYAN, and that individual has not yet been identified.

      b.   Due to the observed behavior, the expired vehicle registration, and the lack of a front license plate, the La Verne PD detectives followed the white GMC pick-up truck driven by MCDONALD after AVETISYAN re-entered the vehicle from the Target store and MCDONALD began to drive

away from the curbside "No Parking Zone." While surveilling MCDONALD and AVETISYAN in the white GMC pick-up truck, the detectives observed behavior that led them to believe that MCDONALD became aware of the detectives' presence. MCDONALD then pulled the vehicle into a hotel parking lot in La Verne and stopped. AVETISYAN then exited the white GMC pick-up truck and entered the hotel lobby where he threw a plastic bag into a trash can. The bag was later recovered, but no related evidence was found in the bag. La Verne PD detectives called for assistance to have a traffic stop conducted on the white GMC pick-up truck that MCDONALD was driving while the La Verne PD detectives continued to look for AVETISYAN inside the hotel. The detectives found AVETISYAN inside the hotel restaurant.

   c. Soon thereafter, officers of the La Verne PD conducted a traffic stop of the white GMC pick-up truck driven by MCDONALD due to the expired registration, the lack of a required front license plate, and the observed suspicious behavior. While conducting the traffic stop, officers were able to see in plain view numerous credit card and retail gift cards in the center of the front bench seat, as well as close to $300 in cash. The two suspects were arrested by the officers of the La Verne PD for the receipt

of known stolen property in excess of $300 and transported back to the La Verne PD.

       d.    Upon his arrest, AVETISYAN was found in possession of an All Access debit card, unaltered, and a receipt that indicated that while he was inside the Target store earlier that day, he used the debit card to withdraw $40. Based on my training and experience, I know that debit cards like the one found in the possession of AVETISYAN can be purchased on the Internet and that such debit cards are often purchased by criminals utilizing stolen or unauthorized credit cards as a way to obtain access to money without having to use the stolen or unauthorized credit cards themselves at retail establishments.

       5.    After the traffic stop and arrest of MCDONALD and AVETISYAN, the white GMC pick-up truck driven by MCDONALD was impounded by the La Verne PD. After being briefed to the facts of this case by the La Verne PD detectives, the LA Verne PD detectives, USS SA Moffit, and I conducted an inventory search of the vehicle. Found inside the white GMC pick-up truck and containers within the vehicle were numerous credit cards, retail gift cards, and "white plastic" cards. Several of these cards were found in locations within the vehicle that were unusual and might be

construed as hiding places for the cards.

6. In total, the white GMC pick-up truck driven by MCDONALD and in which AVETISYAN was a passenger contained sixty-eight (68) American Express credit cards, one hundred sixteen (116) Visa credit cards, thirteen (13) MasterCard credit cards, twenty three (23) Southwest Airlines gift cards, fourteen (14) Wal-Mart gift cards, and five (5) Lowes gift cards. Of these approximately 239 cards, some were found to be unauthorized cards; some were genuine but altered or manipulated; and some were genuine but unactivated. Also found in the vehicle were 23 "white plastic" cards which I know from my training and experience are used to make counterfeit credit cards or to further access device fraud schemes. Tipping foil residue which is used to emboss the numbers on the credit cards and gift cards was found in the vehicle, as well as cards where the numbers had been flattened and re-embossed with new numbers. Several of the cards found inside the white GMC pick-up truck were altered to include the names of MCDONALD or AVETISYAN.

7. SA Moffit and I chose a random sample of cards found in the white GMC pick-up truck and we ran the cards through a device that reads the data encoded in the magnetic

strip. At least fifteen of the cards selected showed that the card numbers embossed on the front of the cards were different from the account information contained on the magnetic strip. Through our training and experience, SA Moffit and I concluded that the magnetic strip on the selected cards had been erased and re-encoded with different account numbers.

8. Also found during the inventory search of the white GMC pick-up truck were copies of credit card receipts in the names of individuals other than MCDONALD or AVETISYAN. These receipts contained personal identifiers such as names, addresses, phone numbers, credit card numbers, expiration dates, and approval codes. Typed lists of credit card numbers with corresponding CVNs (Card Verification Number) and expiration dates were found in the white GMC pick-up truck as well. Also found in the vehicle were several electronic devices such as cell phones and flash drives which have the capability of storing information such as credit card numbers and other personal identifiers.

9. I know from my training and experience that such items as receipts, lists of CVNs, blank credit card stock, tipping foil, and electronic flash drives constitute the

tools of the trade for individuals involved in access device fraud.

10. After reviewing the inventoried items, SA Moffit and I attempted to interview AVETISYAN. Upon advising AVETISYAN of his Miranda rights via Secret Service Form 1737, AVETISYAN stated that he did not wish to waive his rights and the interview was immediately terminated.

11. SA Moffit and I then proceeded to interview MCDONALD. Upon advising MCDONALD of his Miranda rights per via Secret Service Form 1737, MCDONALD agreed to waive his rights and signed the waiver consent form. When questioned about the credit and gift cards found in his possession, MCDONALD, who claimed to be from Colorado, indicated that he was traveling through the La Verne area in order to pick up cards that he had previously purchased because he wanted to discard them in order to get his life back together. MCDONALD indicated that he was also in the area because he was going to be flying to Las Vegas, Nevada from the Los Angeles International Airport. MCDONALD stated that he was going to purchase the airline tickets to Las Vegas with Southwest Airline gift cards that he purchased with a Visa gift card given to him by a friend. He indicated that he purchased the Southwest Airline gift cards from the VONS

grocery store that was located next to the Target store entered earlier that day by his friend AVETISYAN. When questioned about how he came into possession of the cards in the first place, MCDONALD stated that he bought them from a Hispanic male, first and last name unknown, who received them from another party. When asked who the friend was that he was contacting, MCDONALD indicated that he could not give us the individual's name and stated at that time that he would like to retain counsel. The interview was then immediately terminated.

**CONCLUSION**

12. Based upon all of the foregoing facts and my training and experience, I believe that there is probable cause to believe that Kevin MCDONALD and Levon AVETISYAN were in possession of fifteen or more counterfeit or unauthorized access devices in violation of Title 18, United States Code, Section 1029(a)(3).

_____
SA MICHAEL WISELY
United States Secret Service

Sworn and subscribed to before
me on this 17 day of April, 2008.

_____
United States Magistrate Judge